## KANSAS CITY HAY–PRESS CO. v. DEVOL et al.

(Circuit Court of Appeals, Eighth Circuit. May 10, 1897.)

No. 808.

1. PATENTS—INFRINGEMENT SUITS—PLEADING—MULTIFARIOUSNESS.

Where devices covered by several patents are capable of embodiment. and conjoint use in a single machine, a bill which seeks a recovery for infringement of all the patents is not multifarious.

2. SAME.

Where devices covered by several patents are capable of embodiment and conjoint use in a single machine, and all the patents are sued on in one bill, the failure of the complainant either to establish title to one of the patents,. or to show infringement of one or more of them, does not affect his right to an injunction and an accounting in respect to the others, if the proof show that they are infringed. 72 Fed. 717, 'reversed.

3. SAME—PROOF OF ANTICIPATION.

A model of an alleged anticipating machine, made by a witness merely from recollection after 8 or 10 years, and which is introduced without disclosing the fact that it is not an original model until the same is developed on cross-examination, cannot be accepted as sufficient evidence to invalidate a patent.

4. SAME—ANTICIPATION—HAY PRESSES.

The Sooy patent, No. 394,623, for a power mechanism for operating a hay press, in which the pitman is given its forward motion—First, by bringing antifriction rollers on the ends of cranks into contact with an inclined plane on the side of the pitman; and, second, by bringing the antifriction rollers into contact with the end of the pitman, thus giving a powerful forward thrust at the moment the greatest force is required,—held not anticipated by a press in which the power was wholly applied to the very end of the pitman, and also held not infringed.

5. SAME—INFRINGEMENT.

The Sooy patents, Nos. 363,012 and 386,360, relating to the construction of a draft pole or' sweep for a hay-baling press, whereby the sweep is allowed to spring backward so as not to strike the horses when the strain on it ceases as the pitman is released, and which is accomplished by putting a link in the rod which re-enforces or strengthens the sweep, held not infringed.

6. SAME.

The Sooy patent, No. 358,898, for devices to permit the frame at the outer end of the baling chamber of a hay press to expand or contract when any hard substance happens to be mixed with the hay, is not infringed by a device which lacks the element of the coiled spring interposed between the nuts of the crossbars holding the frame together, and the lugs through which the crossbars pass.

7. SAME.

The Sooy patent, No. 456,239, covering a combination relating to hay-baling presses, is not infringed by a press which lacks the element of "a curved spring plate upon the vibrating end of said pitman."

8. SAME.

Patent No. 495,944, to Knight, Kelly, and Alderson, as assignees of Livengood et al., for a hay-baling press, held infringed as to the fifth claim, which covers a combination consisting of "the traverser, pitman, means for operating the pitman, and a folding apron formed in sections pivoted to each other, and connecting the traverser with a stationary portion of the press."

9. SAME — TITLE TO PATENT — DEFECTIVE ASSIGNMENT BY CORPORATION — EFFECT AS TO INFRINGERS.

The fact that an assignment of a patent by a corporation was executed by its president and secretary, who owned all the stock, without any previous authorization by the board of directors, is no defense to an infringement

suit brought by the assignees against a third party, where the corporation itself has never questioned the validity of the assignment.

Appeal from the Circuit Court of the United States for the Western District of Missouri.

This suit was brought by the Kansas City Hay-Press Company, the appellant, against H. F. Devol, George Devol, and W. S. Livengood, the appellees, to restrain the infringement of the following letters patent, to wit: Patent No. 358,-898, issued to Ephraim C. Sooy March 8, 1887; patent No. 363,012, issued to said Sooy May 17, 1887; patent No. 386,360, issued to said Sooy July 17, 1888; patent No. 394,623, issued to said Sooy on December 18, 1888; patent No. 456,239, issued to said Sooy July 21, 1891; and patent No. 495,944, issued April 18, 1893, to James E. Knight, Edward Kelly, and William A. Alderson, as assignees of Winfield S. Livengood, William H. Chadbourne, and James M. Gibbons. The bill showed that the patents had been duly assigned to the complainant company, that they related to a baling press for baling hay, that the several devices covered by the respective patents were capable of embodiment and conjoint use in a single baling press, and that they had been so embodied and used in a baling press that had been manufactured and sold quite extensively by the defendants. There was the usual prayer for an injunction to restrain the alleged infringement, and for an accounting. The defendants denied the complainant's title to patent No. 495,944, they pleaded several anticipatory patents, they denied infringement, and they denied, on information and belief, that the various devices covered by said patents were capable of embodiment and conjoint use in a single baling press.

Patent No. 394,623, issued to Sooy on December 18, 1888, which will be first noticed, covers the power mechanism whereby power is generated to compress the hay or other material as it is fed into the baling chamber. The baling press, as a whole, may be described with sufficient accuracy as follows: A long bedplate is mounted on wheels at both ends, whereby the press can be moved when necessary. At one end of the bedplate is the baling chamber. At the other is the power mechanism. Intermediate between the power mechanism and the baling chamber, and extending from one to the other, is a pitman which actuates the plunger or traverser in the baling chamber. The power mechanism consists of a revolving shaft set upright on the bedplate, which is supported by a ⊂-shaped casting or frame. The shaft is revolved by a sweep or lever extending from the upper end thereof, and at right angles thereto, to which sweep a team is attached. Underneath the sweep two short cranks are rigidly attached to the revolving shaft, on opposite sides thereof, and extend therefrom a short distance at right angles thereto. These cranks have antifriction rollers at their outer ends. On one side of the shaft are two arms which extend laterally beyond the radius of the aforesaid cranks, and serve to control the movement of the pitman, keeping it at all times in a proper relation to the aforesaid cranks. These laterally extended arms at their outer ends hold a guide roller which comes in contact with the outside of the pitman. The pitman, at the end which passes between the laterally extended arms, has an incline on one side, and its end is formed like the human foot with a slight curve or depression. The operation of the mechanism is as follows: When the upright shaft revolves, the antifriction rollers in the outer ends of the short cranks come successively in contact with the incline at the end of the pitman, and by pressure thereon force the pitman outward, as well as forward, in the direction of the baling chamber. As each roller at the end of a crank comes in contact with the pitman, the roller travels down the incline at its side, passes around the heel of the pitman and into the depression at the outer end thereof, and eventually escapes from contact with the pitman, when the latter rebounds, owing to the pressure of the hay in the baling chamber. By the rebound, and the restraining action of the laterally extended arms, the pitman is thrown back to its former position, ready to come in contact with the next crank, and the operation last described is repeated. The pitman is thus driven forward twice, and twice rebounds at each revolution of the shaft. Moreover, by the contrivance aforesaid the power applied to the pitman is very much increased, upon the principle of the toggle joint, when the end of the crank and the end of the pitman come in contact, the operation of the power

mechanism being to apply the greatest pressure when the hay in the baling chamber offers the greatest resistance. The power mechanism last described will be more fully understood by reference to the annexed drawings, Figs. 1, 4, and 5, which form a part of the specification of letters patent No. 394,623.

E. C. Sooy.
Baling Press.
No. 394,623.       Patented Dec. 18, 1888.

Fig. 1

Fig. 4

Fig. 5

The claims in said patent which cover the device last described, and which are said to have been infringed, are as follows: "(1) In a baling press having a suitable bed, the combination, with a driving shaft and its cranks, of laterally extended arms provided with an antifriction guide roller extending beyond the radius of said cranks, a rebounding plunger, and a pitman adapted to rebound within the radius of said cranks, and provided with a contracted, inclined, vibrating end portion, adapted to come in contact with said guide roller, as described. (2) In a baling press having a suitable bed, the combination, with a driving shaft of cranks provided with antifriction end rollers, laterally extended fixed arms provided with an antifriction guide roller extending beyond the radius of said cranks, a rebounding plunger, and a pitman having a vibrating end portion adapted to rebound within the radius of said cranks, and an inclined outer edge portion declining toward its end adapted to come into contact with said guide roller, and retain the said end of the pitman in the path of the antifriction roller on the end of said cranks, for the purpose described."

The device covered by the complainant's patents Nos. 363,012 and 386,360, issued, respectively, May 17, 1887, and July 17, 1888, which is said to have been infringed by the defendants, relates to the sweep or lever by which the upright revolving shaft of the baling press is turned; the object of the patented device being to prevent the sweep from moving forward suddenly and striking the team attached thereto when the crank is released from contact with

the pitman, and the latter rebounds. To this end the inventor provided a rod to serve as a yielding support to the sweep, which rod had a link in the center, the design being that, when the strain on the sweep was released as the contact between the crank and pitman was broken, the link in the rod or yielding support would permit the sweep to spring backward, and prevent it, in a measure, from striking the team. The device in question will be readily comprehended by reference to the accompanying drawing, in which L is the sweep, M the rod or yielding support, and I the yoke attached to the top of the revolving shaft, which is indicated by the letter "a." The claim for this device is couched in patent No. 386,360 in the following language: "(2) The combination, in a baling press, with a driving shaft, of a yoke on said shaft and a draft pole pivotally attached thereto, and having a yielding support beyond the pivotal point of said pole on said yoke, adapted to permit an accelerated speed of the shaft in passing a dead center, to relieve the tension on the draft pole without shock, for the purpose specified."

The device covered by the complainant's patent No. 358,898, issued March 8, 1887, which is said to have been infringed by the defendants, is disclosed by the annexed drawing, Fig. 1, which forms a part of the specification of said patent. It may be said, generally, that the device in question consists of a box or frame bolted to the baling chamber of the hay press, at the delivery end thereof, the outer end of this box or frame being so constructed, by means of lugs, nuts, bolts, and springs, as to permit the same to expand and contract to a limited extent when any hard substance happens to become mixed with the hay. The claim of the patent covering the device in question is as follows: "(1) In a baling press, the combination with a suitable baling chamber of a delivery portion of said press, pivoted at one end thereto, and an opposite, expansible end, and adjusting bolts in suitable lugs upon said expanding end, and nuts upon said bolts, and springs between said nuts and lugs for the purpose described."

Fig.¹

The only device covered by patent No. 495,944, issued April 18, 1893, to James E. Knight and others, as assignees of Winfield S. Livengood and others, which

is involved in the present controversy, is the device covered by the fifth claim of the patent, which reads as follows: "(5) In a baling press, the combination of the traverser, a pitman, means for operating the pitman, and a folding apron formed in sections pivoted to each other, and connecting the traverser with a stationary portion of the press, substantially as and for the purpose set forth." The folding apron is illustrated in the annexed cut, which forms a part of the specification of the patent, and it may be said generally that this invention is designed to close the end of the baling chamber at which the pitman enters when the pitman rebounds. This function is performed automatically by making the apron in two sections, hinging them together, and attaching one section of the apron to the upper part of the traverser or plunger, and the other section to a stationary portion of the press. By this means, as the traverser moves forward the folding apron is extended, and when the pitman rebounds the two sections of the apron are partially folded, and the end of the baling chamber is thereby closed.

Fig. VII.

For reasons which will sufficiently appear in the opinion, no description need be given of the device covered by patent No. 456,239, issued to Sooy July 21, 1891. On the hearing of the case in the trial court the complainant's bill was dismissed. The case comes to this court on an appeal taken by the complainant from such decree.

J. B. Johnson.

Baling Press.

No. 361,764.                                      Patented Apr. 26, 1887.

Fig. 3.

Charles K. Offield and Charles C. Linthicum (James Scammon, John S. Crosby, Henry Stubenrauch, and Richard H. Manning on brief), for appellant.

George A. Neal and T. S. Brown, for appellees.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The circuit court found that the complainant below, who is the appellant here, had not established its title to patent No. 495,944, issued April 18, 1893; and it accordingly dismissed the bill without considering the other patents, upon the theory, no doubt, that there

could be no recovery unless the complainant established its right to an injunction and an accounting as to each patent counted upon in the complaint. Hay-Press Co. v. Devol, 72 Fed. 717, 723. This was an error. The bill charges, and it is also obvious, that the devices covered by the several patents were capable of embodiment and conjoint use in a single hay press. Indeed, only one hay press made by the defendants was produced for the purpose of establishing an infringement of all the patents. Under these circumstances the bill was not multifarious because it sought a recovery in a single suit for the infringement of all the patents. Moreover, a failure of the complainant either to establish its title to one of the patents, or to show an infringement of one or more of the patents, would not affect its right to an injunction and an accounting with respect to the other patents, provided the proof showed that they had been infringed. Nourse v. Allen, 4 Blatchf. 376, 18 Fed. Cas. 459; Gillespie v. Cummings, 3 Sawy. 259, Fed. Cas. No. 5,434; Horman Patent Manuf'g Co. v. Brooklyn City R. Co., 15 Blatchf. 444, Fed. Cas. No. 6,703; Seymour v. Osborne, 11 Wall. 516, 559; Hayes v. Dayton, 8 Fed. 702.

The patent of chief value which is involved in the present controversy is the one first described in the statement, No. 394,623, issued December 18, 1888, and it will be referred to hereafter as the "power patent." The other patents cover different parts of the baling press, and, while they may be useful devices, the successful operation of the machine is not so vitally dependent thereon as it would seem to be on the mechanism described and claimed in the power patent. An attempt was made at the trial to show that the device covered by claims 1 and 2 of the power patent is disclosed substantially by several prior patents, and for that purpose reference was made more especially to the following patents, to wit: Patent No. 361,764, issued to J. B. Johnson April 26, 1887; patent No. 354,517, issued to H. Purrier December 14, 1886; and patent No. 367,539, issued to G. McCarn August 2, 1887. Certain drawings, forming a part of the specifications of these patents, which will suffice to show the alleged anticipatory devices, have been incorporated into the foregoing statement. By reference to these drawings it will be observed that in the Johnson patent the pitman was driven forward by means of a cam attached to a revolving drum or wheel, which meshed into cogs on the side of the pitman bar, and thus moved the pitman forward; that in the Purrier patent a forward motion was given to the pitman by a revolving triangular plate, in the three corners of which antifriction rollers were inserted, which rollers, as the triangular plate revolved, came successively in contact with the end of the pitman and forced it forward; and that in the McCarn patent three lugs were placed at intervals on the periphery of a revolving drum, which lugs, as the drum revolved, came successively in contact with the end of the pitman and moved it forward substantially in the same manner that the pitman was moved by the triangular plate in the Purrier patent. Neither of these devices made use of pressure upon an inclined plane for the purpose of moving the pitman, while the complainant's invention described in the power patent embodies the principle of giving the pitman a forward motion—First, by bringing the

antifriction rollers of the cranks into contact with an inclined plane on the side of the pitman; and, second, by bringing said antifriction rollers into contact with the end of the pitman, thus increasing the power and giving the pitman a powerful forward thrust at the moment the greatest force is required to compress the hay. It cannot be said, we think, that the complainant's invention is disclosed or anticipated by either of the patents aforesaid to which reference has been made. On the trial of the case a model of a hay press was introduced in evidence by the defendants which was said to be a correct model of a hay press that was constructed by the defendant W. S. Livengood during the year 1886, or prior thereto. The model was offered for the purpose of showing that Livengood had made a hay press, either during or prior to the year 1886, which anticipated the device covered by the complainant's power patent. With reference to this model, it is sufficient to say that it was proven on the trial of the case that it was not an original model of the press which it purported to represent, but was made by the defendant Livengood about six months after the institution of the suit at bar for the purpose of being used as evidence to invalidate the claims of the power patent. It was so made merely from the witness' recollection of the structure of the press that it purported to represent, which he had not seen for eight or ten years, and the fact that it was not an original model was not disclosed when it was offered in evidence, but was intentionally concealed until the fact was developed on cross-examination. Under the circumstances, we cannot accept the model in question as sufficient evidence to invalidate the claims of the power patent. Moreover, even if we were able to find that it was a correct model of a hay press constructed by the defendant Livengood, we should be of the opinion that in the hay press in question the power was wholly applied to the very end of the pitman, and that the principle embodied in the complainant's power patent of applying pressure to the incline on the side of the pitman was neither conceived nor applied in the older press which the model purports to represent.

It remains to be determined whether the defendant's baling press infringes claims 1 and 2 of the power patent. It will be observed that one element of the combination covered by those claims consists "of laterally extended arms provided with an antifriction roller extending beyond the radius of said cranks." It is contended by the defendants that this element is wanting in the infringing baling press which was introduced in evidence. None of the drawings which form a part of the power patent disclose the laterally extended arms very clearly, and for that reason it is necessary to say that these arms extend from the ⊏-shaped casting, which supports the revolving shaft, at right angles to the shaft, one of the arms being above and one below the pitman; their sole function being to control the vibrating end of the pitman, and keep it in a position to be acted upon at the proper moment by the short cranks attached to the revolving shaft. These arms hold a roller at their outer end, which comes in contact with the outer edge of the pitman as it is pushed forward or rebounds, and thus lessens the friction. In the infringing device, on the other hand, an arm curving outwardly is firmly attached to the bedplate some distance from the re-

volving shaft, and extends backward in the direction of the shaft, outside of the radius of the cranks, to a point about as far as the pitman goes when it rebounds. An antifriction roller is pivoted to the bottom of the pitman, which presses against the inner side of the curved arm when the pitman is in motion, and thus controls the movement of the pitman, keeping it always in proper relation to the cranks. In the infringing device the pitman is prevented from moving upward or vertically, when it rebounds, by curved rods attached to the frame holding the revolving shaft, which pass over the pitman, and are attached to the axle which supports the bedplate of the press at a point outside of the radius of the cranks. The curved arm or curved way in the infringing device, against which the antifriction roller presses, which is pivoted to the pitman, undoubtedly performs the same function as the laterally extended arms and antifriction roller of the power patent. We cannot say that, as a means of controlling both the lateral and forward motion of the pitman, it is any improvement upon the mechanism designed for the same purpose in the power patent. It seems to be simply a mechanical deviation from the method of construction described in the latter patent, which neither involves a new principle of operation, nor produces a better or a different result. Our conclusion is, therefore, that the curved arm or way in the infringing device must be regarded as a mechanical equivalent for the laterally extended arms of the power patent. It results from this view that claims 1 and 2 of that patent have been infringed.

We are not able to say that the evidence discloses an infringement of the claims of patents Nos. 363,012 and 386,360, which are referred to and described in the statement. The only claim of these patents which is alleged to be infringed is the one quoted in the statement, which seems to be based upon a method of constructing the draft pole or sweep whereby it is allowed to spring backward slightly when the strain on the sweep ceases, as the pitman is released. This object is accomplished by putting a link in the rod which re-enforces or strengthens the sweep. In the infringing device it does not appear that the rod supporting the sweep is divided into sections by a link, or that it was designed to permit the sweep to spring backward to any marked extent. The rod in question is rigidly attached at one end to the sweep, and at the other to the yoke by which the shaft is turned. Its sole function would seem to be to strengthen or re-enforce the sweep. If it has any other function, it is not disclosed by the model of the infringing device which was offered in evidence.

We have also reached the same conclusion last announced with reference to the charge of infringement in so far as it respects complainant's patents Nos. 358,898 and 456,239. Without going into the subject in detail, as these patents do not seem to be of much value or importance, it will suffice to say that the means employed by the defendants in the infringing device to permit the frame attached to the outer end of the baling chamber to expand or contract are so essentially different from the means described to accomplish the same object in complainant's patent No. 358,898 that the claim of infringement as to the latter patent cannot be sustained. In the complainant's device a coiled spring is interposed between the nuts of the

crossbars which hold the frame together, and the lugs through which the crossbars pass. In this way the end of the delivery chamber is made to expand or contract as occasion requires. In the defendants' device no such coiled springs are employed. Besides, we entertain such grave doubt as to whether the device covered by claim 1 of patent No. 358,898 possesses patentable novelty that in any event the patentee should be limited to the precise form of construction described in his patent.

Complainant's patent No. 456,239 is not infringed by the defendants, for the reason that the combination covered by the claims of that patent which are said to have been infringed embrace, as one element thereof, "a curved spring plate upon the vibrating end of said pitman"; and there is no pretense that the hay press manufactured by the defendants employs such a spring plate on the end of the pitman, or anything equivalent thereto.

This brings us to a consideration of patent No. 495,944, which was issued on April 18, 1893, to James E. Knight, Edward Kelly, and William A. Alderson, as assignees of Winfield S. Livengood et al. The trial court held that the complainant company had no title to this patent which would enable it to complain of an infringement thereof. The hay press which is being manufactured by the defendants discloses a combination such as is covered by the fifth claim of patent No. 495,-944, consisting of "the traverser, pitman, means for operating the pitman, and a folding apron formed in sections pivoted to each other, and connecting the traverser with a stationary portion of the press." The defendants are therefore guilty of an infringement of the fifth claim of this patent, and the only question to be considered is whether the complainant company has a title thereto. Its alleged title was thus derived: Livengood, Chadbourne, and Gibbons, the inventors, prior to the issuance of the patent conveyed the invention to a corporation, the Midland Manufacturing Company. The Midland Manufacturing Company conveyed the same to Edward Kelly by a written assignment which was signed by W. H. Chadbourne as president of the company, and attested by the signature of P. D. Myers, its secretary, with the corporate seal attached. Kelly then transferred a two-thirds interest in the invention to James E. Knight and William A. Alderson, and Kelly, Knight, and Alderson subsequently sold and assigned the patent, after it was issued to them, to the complainant, the Kansas City Hay-Press Company. It is the conveyance from the Midland Manufacturing Company to Kelly which is supposed to be defective, for the reason that it was not executed in pursuance of a resolution of the board of directors of the company. When the last-mentioned assignment was made, Chadbourne, the president of the company, and Myers, the secretary, were the owners of all the capital stock of the Midland Manufacturing Company. Livengood, it seems, had a lien on certain shares of the stock that were held in pledge for his benefit to secure a debt in the sum of about $1,000 which Chadbourne owed him. The corporation to whom the invention belonged has never as yet questioned the validity of the assignment to Kelly, although that assignment was executed on March 23, 1893, and the patent was subsequently issued to parties who derived their right to the patent under

that assignment. Moreover, as we understand the evidence contained in the present record, the consideration received for the assignment of the invention to Kelly was the satisfaction of a certain indebtedness which the Midland Manufacturing Company owed Kelly, and which that company also owed Knight and Alderson for professional services that had been rendered for and in behalf of the company. It also appears from the testimony that, although the assignment was not formally authorized by the board of directors, yet that Chadbourne and Myers, who owned all the stock of the company, after a full consideration of the condition of the company concluded to execute the assignment, as the company was at the time insolvent and unable to further prosecute its business. In view of these facts, we are constrained to hold that the defendants in this suit cannot successfully challenge the complainant's title to patent No. 495,944. We are of opinion that the Midland Manufacturing Company is alone entitled to question the validity of the assignment which was executed by its president and secretary, and that none of the defendants occupy such a relation to that company as entitles them to complain of a sale of a corporate asset of which the company itself does not see fit to complain. It may be conceded that the sale of the patent in question to Edward Kelly was not within the scope of the ordinary powers of the president and secretary, but the act in question was not ultra vires, and it was clearly subject to ratification by the corporation. Inasmuch as four years have elapsed since the assignment was executed, and the corporation has shown no disposition to question its validity, and inasmuch as the assignment under which the complainant derives title is good and sufficient in form to transfer a legal title to the patent, we think that no third party—not even a person who has a lien on certain stock of the corporation—should be permitted to challenge the validity of the assignment in a collateral proceeding. 2 Mor. Corp. §§ 619, 626, 631, and cases there cited.

It results from these views that the decree dismissing the bill of complaint was erroneous. The decree of the circuit court is accordingly reversed, and the case is remanded to that court, with directions to enter a decree dismissing the bill at complainant's cost as to patents Nos. 358,898, 363,012, 386,360, and 456,239, and with further directions to enter a decree establishing the validity of patents Nos. 394,623 and 495,944 and the complainant's title thereto, with costs; also, with directions to award an injunction restraining the defendants from infringing claims 1, 2, and 3 of said patent No. 394,623, and claim 5 of patent No. 495,944; and also with directions to order an accounting as to the profits realized by the defendants and the damages sustained by the complainant in consequence of the infringement of the above-specified claims of the two patents last described.