## In re PRATT LAUNDRY CO.

(District Court, D. Connecticut. October 20, 1924.)

No. 6764.

1. **Corporations ⬤═426(10)—Chattel mortgage of bankrupt corporation, executed by president, held valid, where consideration received and terms were not objected to.**

A chattel mortgage, executed by the president of a bankrupt corporation under authority of a resolution of its directors, *held* not invalid because its terms differed somewhat from those specified in the resolution, where bankrupt received and retained the consideration, and neither the corporation nor any of the directors objected to its terms.

2. **Corporations ⬤═426(10) — Acceptance of benefits of unauthorized contract is ratification.**

A corporation which accepts and retains the benefits of a contract made by its president, though in excess of hs express authority, will be held to have ratified the contract, and is subject to its obligations.

3. **Corporations ⬤═309(5)—Mortgage to a director, made in good faith, is valid.**

Where a mortgage by a corporation was made in good faith and for a valuable consideration, the fact that the mortgagee was a director is immaterial.

4. **Bankruptcy ⬤═184(1) — Corporations ⬤═426(1)—Ratification of mortgage by bankrupt corporation held binding on other creditors and subsequent trustee in bankruptcy.**

Ratification by a corporation of a mortgage executed by its president is binding on its other creditors and its subsequent trustee in bankruptcy.

In Bankruptcy. In the matter of the Pratt Laundry Company, bankrupt. On review of order of referee. Affirmed.

Solomon Elsner, of Hartford, Conn., for mortgagee.

Arthur E. Howard, Jr., of Hartford, Conn., for certain preferred creditors.

George H. Cohen, of Hartford, Conn., for trustee.

THOMAS, District Judge. From the decision of the referee, sustaining the validity of a certain mortgage which was the subject of attack, the trustee and certain creditors bring this petition to review that decision.

The Pratt Laundry Company, Inc., a corporation organized under the laws of Connecticut, was adjudicated a bankrupt on January 24, 1924. On the following day an order of reference was entered, and on April 25 a hearing was held by the referee to determine the validity of the mortgage executed by the president of the corporation in favor of Max Rosenfield. The facts concerning the execution of the mortgage are as follows:

In the early part of 1922 Rosenfield, the mortgagee, indorsed notes for the Pratt Laundry Company and advanced money to the corporation pursuant to an agreement on his part to finance the business. In consideration of this he received chattel mortgages to secure him, 50 shares of stock in the corporation, and was made a director and treasurer of the corporation. Two of the 50 shares of stock received by him were held in the name of his wife, who was also made a director. The other directors were Joseph Rosenblatt, its president, and his wife, who held the remainder of the stock of the corporation.

On February 20, 1923, a meeting of the board of directors of the company was held for the purpose, among others, of changing the financing agreement between Rosenfield and the company. At this meeting it was agreed to give Rosenfield a new mortgage, amounting to $10,837.39. One mortgage of $7,400 held by him was to be canceled. The new mortgage was to secure Rosenfield on indorsements he had made shortly before the meeting. The directors adopted the following resolution authorizing the president to execute the mortgage:

"Voted, that the president be and he is hereby authorized and directed to execute

and deliver a mortgage of the corporation to Max Rosenfield, conditioned that, if the corporation shall pay notes held by Max Rosenfield in the sum of fifteen hundred ($1,500) dollars, dated December 21, 1922, and January 12, 1923, respectively, State Bank & Trust Company, for sixty-one hundred ($6,100) dollars, City Bank & Trust Company, for thirteen hundred ($1,300) dollars, J. M. Cohn, for eight hundred ninety-seven and 61/100 ($897.61) dollars, and M. Greenberg & Company for ten hundred thirty-nine and 78/100 ($1,039.78) dollars, respectively, aggregating ten thousand eight hundred thirty-seven and 39/100 ($10,837.39) dollars, within five years from date, or any renewals of such notes within said period, then the mortgage is to be void, otherwise in full force and effect; also conditioned that in case the said Rosenblatt disposes of his stock of the corporation, or discontinuance being actively engaged in the conduct of the business of the corporation, then said obligations shall immediately mature, provided that nothing in the foregoing conditions shall be so construed as to prevent the corporation from anticipating or accelerating the payment of the above obligations, and conditioned further that there shall be canceled and discharged a certain mortgage given by the corporation to Max Rosenfield February 30, 1922, securing obligations aggregating seventy-four hundred ($7,400) dollars."

Four days later, to wit, on February 24, 1923, Rosenblatt executed the mortgage, the validity of which is now in question. This instrument, a mortgage on the personalty owned by the Pratt Laundry Company, after setting forth the property mortgaged, and the consideration therefor, reads as follows:

"Now, therefore, if the grantor herein shall from time to time, and within five years from date hereof, pay and discharge all of said promissory notes hereinbefore recited, which the said grantee holds, or has assumed and agreed to pay as aforesaid on account of his endorsement as they shall respectively become payable and shall from time to time pay and discharge all renewals of the same, which are endorsed by the grantee for the grantor's accommodation, and shall secure and indemnify the grantee and his representatives from all costs and damages on account of the liabilities that have been, or may be, assumed by the grantee in pursuance of the aforesaid agreement, and if the grantor shall keep said premises insured for the benefit of, and to the satisfaction of the grantee, and if the grantor con-

tinues engaging actively in the conduct of its laundry business, and is not adjudged a bankrupt or goes into the hands of a receiver, and if its present president continues in active management of the laundry which the grantor conducts, then this instrument shall be void; otherwise to remain in full force and effect."

The corporation went into the hands of a receiver in December, 1923, and the mortgagee therefore contends that under the terms of the mortgage he is to be considered a preferred creditor of the bankrupt. The petitioners contend that the mortgage is invalid, because it was unauthorized by the corporation inasmuch as the terms of the instrument as executed exhibit a material variance from the terms authorized by the directors as set forth in the resolution adopted at the meeting of February 20th.

[1] The referee found that there was no material variance between the terms of the mortgage as executed and the resolution authorizing it, and though, if the resolution is to be read literally, this conclusion would seem erroneous, it seems very probable that the mortgage expresses the real intention of the directors of the corporation, of whom Rosenfield was one. But, assuming that there is a material variance, as the trustee and creditors argue, I am nevertheless of the opinion that the referee's decision must be affirmed.

The corporation received the benefit of Rosenfield's loan and assumption of liability, by way of indorsement of a number of the corporation's notes. All of the directors knew that a mortgage was to be executed, and had full opportunity to inspect the instrument to learn its terms after it was given to Rosenfield. Yet no objection was ever made by the corporation, or any member of it, though there was ample time between the giving of the mortgage and the date of the appointment of the receiver in which to make such an objection.

There are elements in this case which make inapplicable many of the cases cited by counsel for the mortgagee, including Sioux City Terminal R. & W. Co. v. Trust Co. of North America, 82 F. 124, 27 C. C. A. 73, and Union Pacific Ry. Co. v. Chicago, R. I. & P. Ry. Co., 51 F. 309, 2 C. C. A. 174. These cases were decided on the ground that the corporation was estopped to deny the authority to execute the mortgages involved, since there had been a representation by the corporations to the mortgagees that the instruments were executed in accordance with the resolutions of the direc-

tors, on the faith of which representations the mortgagees had substantially changed their positions. Since, in the present case, Rosenfield was present at the directors' meeting, and voted as a director, he is chargeable with knowledge of the tenor of the resolution there adopted, and there can be no basis for an estoppel on the ground of a change in position in reliance upon a representation by the corporation through its agents. My conclusion, therefore, is not that the corporation is estopped to deny the authority of its president to execute the mortgage, but that, failing to repudiate it and by retaining the benefits of Rosenfield's acts, it must be held to have ratified the transaction.

[2] It is a familiar principle that an individual who retains the benefits of a contract entered into by his agent, the agent having no antecedent authority to enter into such a transaction for the principal, is to be held to have ratified the contract and to be subject to its obligations. The same principal has been applied where the principle is a corporation and the agent is one of its officers. In Mercer, Receiver, v. Steil et al., 97 Conn. 583, at page 588, 117 A. 689, 690, Mr. Justice Beach said:

"As to the objections to the validity of the certificate and mortgage based on the wrongful delegation of authority by the directors, and on the defective execution of the documents, it is enough to say that so long as a private corporation acts within the powers conferred upon it by law in dealing with its own property, it is subject to the same rules of agency and estoppel as an individual. The law imputes to this corporation knowledge of the form and contents of the documents which its agents, acting within the general scope of their authority executed in its name and for its benefit; and if these agents exceeded their authority or disobeyed their instructions in any matter of detail, the corporation was bound to elect within a reasonable time whether it would repudiate or ratify the transaction. Having accepted the loan of $70,000, the corporation was also estopped, so long as it retained the money, to repudiate in whole or in part the written contract of pledge on the faith of which the money had been advanced. And from the facts of its retention and use of the money, the law implies a ratification of the contract of pledge and of all acts of the corporate agents to make the pledge effectual."

Fletcher, in his Cyclopedia of Corporations, in volume 3, p. 3206, says: "A cor-poration may expressly or impliedly ratify contracts made or other acts done by the president without authority. And if it accepts the benefit of the contract or act or acquiesces therein with knowledge, it impliedly ratifies it." See, also, Pittsburgh, Cincinnati & St. Louis Ry. Co. v. Keokuk & Hamilton Bridge Co., 131 U. S. 371, 9 S. Ct. 770, 33 L. Ed. 157.

Apart from the decisions of the courts, the facts in this case would seem, on principle alone, to sustain the mortgage, so far as the objection to it consists in the alleged lack of authority of the president to execute it. Rosenblatt, the president of the Pratt Laundry Company, appears to have been the only one who took any substantial part in the actual management of the company's business. The position of the other officers appears to have been more nominal than otherwise. Rosenfield and his wife were made directors solely by reason of his undertaking to finance the corporation. Practically all the stock was held between Rosenfield and Rosenblatt, their wives, or the wife of Rosenfield, she at least having merely enough to qualify as a director, and this stock was apparently under the control of her husband. Of the four directors, obviously Rosenfield would not object to the mortgage as executed, and it seems very unlikely that his wife would, Rosenblatt, having asserted his authority to sign the deed, would be precluded from so doing. Rosenblatt's wife, it seems, was content to leave the management of the affairs of the company to her husband. In the light of these circumstances, it would seem very far-fetched to hold unauthorized a mortgage apparently entered into in good faith and for a valuable consideration.

[3] Nor does it appear in what way the petitioning creditors were injured by whatever variance there might be between the mortgage and the resolution of the directors respecting it. The mortgage was on record, and it is there that creditors would look, in ascertaining the recorded obligations of the company, and not to the minute books kept by the secretary of the corporation. There being no allegation of fraud, or any suggestion that the transaction was not in good faith, the fact that the mortgagee was a director is not material. In re Lake Chelan Land Co., 257 F. 497, 168 C. C. A. 501, 5 A. L. R. 557; Sanford Tool Co. v. Howe, Brown & Co., Ltd., 157 U. S. 312, 15 S. Ct. 621, 39 L. Ed. 713.

[4] Having found that the corporation ratified the act of its president in giving the

mortgage, it follows that this ratification is binding as against the other creditors of the corporation and the trustee. Kansas City Hay-Press Co. v. Devol, 81 F. 726, 26 C. C. A. 578; Shawmut Commercial Paper Co. v. Auerbach, 214 Mass. 363, 101 N. E. 1000; Fletcher's Cyclopedia of Corporations, vol. 3, § 1947.

The point has been raised, but not argued in the briefs of counsel, that under the statutes of Connecticut some of the chattels which the mortgage deed purports to convey are not capable of being mortgaged without transfer of possession. My conclusion therefore is that the mortgage is a valid lien on so much of the property described therein as fulfils the provisions of the Connecticut statute regarding chattel mortgages. General Statutes, Revision of 1918, § 5206.

The order of the referee is therefore affirmed. Ordered accordingly.