FREDERIC W. MERCER, RECEIVER, vs. FRANK STEIL ET ALS.

Second Judicial District, Norwich, April Term, 1922.
WHEELER, C. J., BEACH, CURTIS, BURPEE and HAINES, Js.

Authority conferred upon corporations organized under our Corporation Act, to issue "notes, bonds or other evidences of indebtedness" (General Statutes, § 3504), permits their issue upon

such terms as the corporation may be able to obtain; likewise the power to mortgage real and personal property (§ 3504), includes the power to pledge its own corporate bonds when issued, and having this general power to pledge, the corporation is not to be restricted by mere implication to a pledge for face value.

So long as a private corporation acts within the powers conferred upon it by law in dealing with its own property, it is subject to the same rules of agency and estoppel that apply to an individual. Accordingly, if the agents of the corporation, acting within the general scope of their authority in issuing bonds and in pledging them for a bank loan, exceed or disobey their instructions in any matter of detail, the corporation, having imputed knowledge of the form and contents of the documents, is bound to elect within a reasonable time whether it will repudiate or ratify the transaction. By accepting the loan made at its request and for its benefit, it is estopped, so long as it retains the money, from repudiating, in whole or in part, the written contract of pledge on the faith of which the money had been advanced by the bank. The retention and use of the money implies a ratification of the contract of pledge, and of all acts of the corporate agents to make the pledge effectual.

In the present case the corporation had twice renewed its note with the contract of pledge written on its face. *Held* that this constituted an actual ratification.

Unless otherwise provided, corporate bonds secured by a trust mortgage and pledged as collateral for a loan, are subject to sale, upon default in the payment of the loan, in the same way as tangible chattels similarly pledged, and are enforcible by a bona fide purchaser before maturity, for their full face value, although he may have bought them for considerably less. To limit his interest in the bonds to the amount he paid for them, would obviously render collateral unsalable.

Argued April 25th—decided July 14th, 1922.

SUIT to secure the surrender and cancellation of a bond for $100,000 and of a mortgage securing the same, upon the ground of their alleged invalidity, and for other equitable relief, brought to the · Superior Court in New London County where a demurrer to the complaint was sustained, *Banks, J.,* and thereafter judgment was rendered (*Brown, J.*) for the defendants, from which the plaintiff appealed. *No error.*

It appears from the complaint that in April, 1919, the stockholders of the Niantic Menhaden Oil and Guano Company authorized the directors to cause to be prepared a mortgage in the sum of $100,000, covering all the real and personal property owned or thereafter acquired by the corporation, and to issue bonds, secured thereby, for the same amount. The directors were also authorized to negotiate the bonds by sale or hypothecation, as in their judgment the interest of the corporation might require. Thereafter the directors authorized the president and treasurer to make and issue bonds in the form authorized by the stockholders, and convey by trust mortgage all the present and after-acquired property of the corporation, and to insert therein such provisions as in their judgment and in the judgment of the trustees might be right and proper to give full effect to the trust and adequate security to the bonds. The president and treasurer were also authorized to execute and deliver to the National Exchange Bank of Baltimore a negotiable promissory note of the corporation for $70,000, with interest at six per cent, and to deliver to the bank as collateral security the entire issue of bonds or an interim certificate therefor. Whereupon the interim certificate in question was prepared and signed in the following form: "The Niantic Menhaden Oil and Guano Company, by Clarence M. Shay, President"; the corporate seal being affixed and attested by the secretary. A form of trust mortgage was also prepared, signed and sealed in the same form, and acknowledged by the president and by the treasurer, who deposed that they signed, sealed and delivered the same by direction of the board of directors as their free act and deed and the free act and deed of the corporation. The interim certificate is payable to bearer, and the note for $70,000 was in the form of a negotiable col-

lateral note payable on demand, reciting the deposit of the interim certificate as collateral, and authorizing the sale of the collateral security at public or private sale in case of default. The complaint further alleges the payment, in two instalments, of $20,000 on the principal of the note, and that, on and after September 1st, 1920, the total amount of principal due on the note was $50,000. On October 6th, 1920, the president, Shay, was appointed temporary receiver of the corporation, and on October 27th the plaintiff, Mercer, was appointed and qualified as temporary receiver, and by order of court as permanent receiver on the fifth of November. Between October 6th and October 20th the bank demanded payment of the note, and on default gave notice of its intention to sell the collateral at public auction. It is then alleged that by direction of a judge of the Superior Court the temporary receiver notified the defendant Frank Steil, who was present at the sale on October 20th, that a receiver of the corporation had been appointed, that the balance due on the note was $50,000, that the bank had no authority from the receiver to sell the collateral, and that the interim certificate was not a valid and outstanding obligation of the corporation, and that notwithstanding such notice the interim certificate was offered for sale and was bid in by the defendant Steil for $51,400. It is not alleged that any other reason was given to the defendant Steil for the alleged invalidity of the certificate, than the fact that a receiver had been appointed and that the bank had no authority from the receiver to sell the certificate. The principal reasons now alleged for the invalidity of the certificate and mortgage are that the pledge of the certificate for less than its face value was *ultra vires* of the corporation; that the directors exceeded their authority in delegating to the president and treasurer some alleged discretion-

ary powers conferred upon them by the stockholders, and that the papers were not executed in the form prescribed by the board of directors.

The receiver claims a decree cancelling and declaring the certificate void, ordering the defendant Steil to surrender the same for cancellation, enjoining the defendant Steil from transferring and negotiating the same, and settling the amount equitably due from the corporation to the defendant Steil. The trustees of the mortgage are joined as defendants, and a decree is asked ordering them to surrender the mortgage for cancellation.

The defendants demurred to this complaint for a number of reasons which may be summed up as follows: that on the face of the complaint the certificate and mortgage were and are valid and outstanding obligations of the corporation notwithstanding the subsequent appointment of a receiver; that by the contract of pledge and the subsequent default in the payment of the note, the bank became the holder in due course of the interim certificate with power to sell, and exercised that power in accordance with its rights as pledgee; that at the time of the sale no notice was given to the defendant Steil of any fact constituting a defect or infirmity in the certificate, mortgage, or contract of sale; that there is no allegation that the sale was not made in good faith and for a fair consideration, and that it appears from the complaint that the defendant Steil is a bona fide purchaser for value.

*Charles Hadlai Hull*, for the appellant (plaintiff).

*E. Allan Sauerwein, Jr.*, of Philadelphia, and *Charles B. Waller*, for the appellees (defendants).

BEACH, J.  Two questions are raised by this appeal: whether the interim certificate for one hundred bonds

of the par value of $1,000 each is a valid and outstanding obligation of the corporation, and if so, to what extent it is enforcible in the hands of the defendant Steil.

The only respect in which it is claimed that any part of the transaction was *ultra vires*, is that the certificate was pledged for less than its face value. No authority is cited to support the proposition that a private corporation may not lawfully sell or pledge its bonds for less than face value. Our statutes, § 3504, expressly confer on every corporation organized under the Corporation Act the power to mortgage its real and personal estate and to "issue promissory notes, bonds or other evidences of indebtedness." There is no requirement in the Corporation Act that such bonds shall be issued at par, and in the absence of statutory restrictions the general authority to issue bonds must be understood as authorizing the corporation to issue them on such terms as it may be able to secure. Such is the common practice. 14A Corpus Juris, §§ 2576, 2597. So, also, the power to mortgage real and personal property must include the power to pledge its own corporate bonds when issued, and a private corporation having general power to pledge cannot, by mere implication, be restricted to a pledge for face value.

As to the objections to the validity of the certificate and mortgage based on the wrongful delegation of authority by the directors, and on the defective execution of the documents, it is enough to say that so long as a private corporation acts within the powers conferred upon it by law in dealing with its own property, it is subject to the same rules of agency and estoppel as an individual. The law imputes to this corporation knowledge of the form and contents of the documents which its agents, acting within the general scope of their authority, executed in its name and for

its benefit; and if these agents exceeded their authority or disobeyed their instructions in any matter of detail, the corporation was bound to elect within a reasonable time whether it would repudiate or ratify the transaction. Having accepted the loan of $70,000, the corporation was also estopped, so long as it retained the money, to repudiate in whole or in part the written contract of pledge on the faith of which the money had been advanced. And from the facts of its retention and use of the money, the law implies a ratification of the contract of pledge and of all acts of the corporate agents to make the pledge effectual. Moreover, the complaint itself discloses an actual ratification, for it alleges that the corporation has twice renewed the note and the contract of pledge written on its face. It has therefore twice reaffirmed the validity of the interim certificate and mortgage, after full knowledge of their alleged defects. The plaintiff cannot now repudiate these obligations on the ground of mere irregularity in their execution, or lack of antecedent authority which the corporation might lawfully have originally conferred upon its agents. *Perry* v. *Simpson Waterproof Mfg. Co.*, 37 Conn. 520, 539; *Norwalk Gaslight Co.* v. *Norwalk*, 63 Conn. 495, 522, 28 Atl. 32; *Louisville, N. A. & C. Ry. Co.* v. *Louisville Trust Co.*, 174 U. S. 552, 19 Sup. Ct. 817.

As to the second question, the plaintiff's claim, that the certificate is enforcible by the defendant Steil only to the amount of the price which he paid for it at the sale, derives its real force from the erroneous assumption that the certificate and mortgage were invalid, and that the defendant Steil had notice of their invalidity before the sale. When the alleged invalidity disappeared, it also takes out of the case the alleged notice of invalidity, and the remaining question is whether the defendant Steil, being a bona

Mercer *v.* Steil.

fide purchaser of the certificate at a pledgee's sale made
in conformity with the contract of pledge, acquired
an absolute title. The plaintiff's contention is that
he did not acquire an absolute title, but became him-
self a *quasi*-pledgee of the certificate, and entitled to
enforce it only to the extent of his own advantage.
It cannot, of course, be broadly contended that a
purchaser of collateral security at a pledgee's sale
becomes a pledgee and not an owner of the collateral;
and so the claim is made in the narrower form that
"one who purchases bonds from the pledgee of the
corporation with knowledge that they have been
pledged for less than face value, is entitled to recover
from the corporation only the amount" due on the
principal obligation for which said bonds were pledged
as collateral security. This quotation is taken from
14A Corpus Juris, § 2617, but on examining the case
of *Shellenberger* v. *Altoona & P. C. R. Co.*, 212 Pa. St.
413, 61 Atl. 1000, which is the only case cited for that
particular proposition, it is apparent that the com-
mentator has missed the point of the decision. The
bonds in that case were admittedly *ultra vires* and
illegal, because of a general statute forbidding railway
companies to issue bonds until the capital stock was
fully paid; and while the purchasers knew that the
bonds were pledged for less than their face value, the
only point of law decided was that the trial court
erred in excluding evidence that the purchasers also
had full knowledge, before the sale, of the fact that the
bonds were illegally issued. It was not notice of a
pledge for less than face value, but notice of the in-
herent illegality of the bonds which the court held
would, if the fact were proved, prevent the purchasers
from being treated as holders in due course. This
ruling is in accord with our own statutory definition
of a holder in due course. General Statutes, §§ 4410,

4412. The plaintiff cited two other cases in support of the above quoted proposition: *Peacock* v. *Phillips*, 247 Ill. 467, 93 N. E. 415, and *Jenckes* v. *Rice*, 119 Iowa, 451, 93 N. W. 384. The Illinois case involved a right of a purchaser of a personal note and mortgage held by a bank as collateral for a note of less amount made by one of the mortgagors, to foreclose the mortgage at its face value; and the decision turned on the fact that under the Illinois law the mortgage was not assigned. Hence the purchaser took it subject to all equitable defenses to which it was subject in the hands of its assignor. It is, however, expressly pointed out in that opinion that corporation bonds intended to pass from hand to hand and secured by a trust mortgage constitute an exception to that rule; and of these the court said: "To permit equitable defenses to be interposed would practically destroy such methods of raising money, and the corporation is properly estopped to deny its liability." In the Iowa case the collateral was a contract of indemnity, which was treated as nonnegotiable, and the same distinction is pointed out.

On the other hand, in the case at bar the interim certificate is a valid negotiable instrument payable to bearer. It is a collateral security within the definition laid down in *In re Waddell-Entz Co.*, 67 Conn. 324, 334, 35 Atl. 257. The power of sale is absolute, and necessarily so in order to make the certificate available as collateral for a bank loan. To hold that the purchaser took only the rights of a pledgee to the extent of his own advances, would nullify the contract of pledge, by making the collateral unsalable; for no one would buy it on such terms.

The power to issue, and the incidental power of pledging bonds, is conferred on private corporations for the purpose of enabling them to raise money, and

there is the highest authority for the proposition that when corporate bonds secured by a trust mortgage are pledged as collateral security for a loan they are, unless the contract otherwise provides, subject to sale on default in the same way as tangible chattels similarly pledged, and are enforcible, to the extent of the security, by any bona fide purchaser before maturity, irrespective of whether he paid less than their face value. *Cromwell* v. *County of Sac*, 96 U. S. 51; Jones on Collateral Securities (3d Ed.) § 70; 3 Cook on Corporations (7th Ed.) § 763; *Guaranty Trust Co.* v. *Galveston City R. Co.*, 31 C. C. A. 235, 87 Fed. Rep. 813; *Hiscock* v. *Varick Bank*, 206 U. S. 28, 37, 27 Sup. Ct. 681, and cases cited.

There is no error.

In this opinion the other judges concurred.