## CENTRAL TRUST CO. OF ILLINOIS et al. v. CASSIDY.

(District Court, D. Connecticut. June 21, 1924.)

No. 1624.

1. **Corporations ⚖➡426(10)—Sale of bonds by agent ratified by acceptance of proceeds without objection.**

A corporation cannot contest its full liability on bonds issued on the ground that, whereas, the formal resolution of its directors authorized their sale by its agent at par, they were sold for less, where the resolution also authorized payment of 10 per cent. of the proceeds to the agent for selling and the corporation, after notice of the price at which the bonds were offered, made no objection and received and retained 90 per cent. of their par value, with the accrued interest.

2. **Corporations ⚖➡482(1)—Purchase of bonds of corporation by guarantor held not to operate as "payment," precluding foreclosure.**

A purchase by the guarantor of bonds of a corporation which had matured at par *held* not to operate as a payment, which precluded the mortgage trustee from maintaining a suit to foreclose, in the absence of proof that payment was intended.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Payment.]

3. **Corporations ⚖➡482(5)—In suit to foreclose corporation mortgage, production of bonds not necessary.**

In a suit by the trustee to foreclose a mortgage securing bonds of a corporation, it is not necessary that the bonds be produced and put in evidence.

In Equity. Suit by the Central Trust Company of Illinois and another, trustees, against John H. Cassidy, receiver of the Eastern Brass & Ingot Corporation of New York. Decree for complainants.

⚖➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

William W. Gager, of Waterbury, Conn., for plaintiffs.
Carroll C. Hincks, of Waterbury, Conn., for defendant.

THOMAS, District Judge. This is a bill to foreclose a mortgage or deed of trust executed by Eastern Brass & Ingot Corporation, organized under the laws of New York, in favor of Central Trust Company of Illinois and Aksel K. Bodholdt, as trustees for bondholders, under the terms of a trust indenture. The mortgage was executed to secure the payment of money obtained from an issue of bonds of the par value of $100,000. The plaintiffs are trustees for the bondholders named in the trust indenture, which is dated May 1, 1920, but actually executed June 2, 1920. The defendant John H. Cassidy is the receiver in equity of Eastern Brass & Ingot Corporation.

The plaintiffs claim that some of the bonds and interest-bearing coupons maturing more than 30 days before this suit was brought were not paid, and that pursuant to the terms of the trust indenture they are entitled to bring this action to foreclose. Since November 21, 1922, the date the suit was brought, all of the bonds and coupons have matured, and the plaintiffs claim that they are therefore entitled to a decree for the full amount of the proceeds of the sale of the mortgaged property, which took place in April, 1924.

[1] The receiver interposes several defenses, which will be considered in the order in which they are pleaded. His first contention is that Central Trust Company was authorized by the directors of Eastern Brass & Ingot Corporation to sell the bonds for par and accrued interest, and that, inasmuch as they were sold for less than par, so as to net Eastern Brass & Ingot Corporation but $90, plus accrued interest, on each $100 of bonds sold, there is a partial failure of consideration, and the trustees, therefore, are not entitled to foreclose for the full amount of the security.

The evidence shows that in the spring of 1920, prior to the issue of the bonds and the execution of the trust indenture, a conference was held, at which three of the five directors of Eastern Brass & Ingot Corporation and an officer of the Central Trust Company were present. It is further shown that at that conference an agreement was reached whereby Central Trust Company was to undertake to sell the bonds of the Eastern Brass & Ingot Corporation so as to net that corporation $90. The balance of the price at which they should be sold, if any, was for the benefit of Central Trust Company for its services in disposing of the issue. It seems, also, to have been understood that the bonds were to be sold at less than par, so that, though on their face they bore interest at 7 per cent., the purchasers would realize 8 per cent. on their investment. To facilitate their sale, it was arranged that Gen. Charles G. Dawes, an officer of the Central Trust Company and a stockholder in the Eastern Brass & Ingot Corporation should guarantee the payment of principal and interest.

Thereafter the stockholders of the Eastern Brass & Ingot Corporation authorized their directors to dispose of $100,000 of bonds on such terms as they (the directors) should deem proper, and the directors passed a resolution authorizing the issue of the bonds and the execution

of the trust indenture. A further resolution of the board of directors, adopted at a meeting held June 2, 1920, read as follows:

"Be it resolved by the board of directors of the Eastern Brass & Ingot Corporation of New York that the vice president of this corporation be and he is hereby authorized to employ the Central Trust Company of Illinois to sell for the account of this company, at not less than par and accrued interest, each and all of the bonds authorized to be issued under the mortgage to be executed by this company to the Central Trust Company of Illinois and Aksel K. Bodholdt, as trustees, and to pay to said Central Trust Company of Illinois, as compensation for its services in selling said bonds, an amount equal to 10 per centum of the principal amount of the bonds so sold."

It appears that a circular was drawn up by the bond department of the Central Trust Company, showing the terms of the sale, and at least one printed copy was sent to the officers of the Eastern Brass & Ingot Corporation for approval, but it does not appear that any objection to the terms of sale, as set forth in that circular, was ever expressed by either the officers or directors of the Ingot Corporation, although the circular contained the statement that the bonds were for sale and were to be sold for less than par.

On June 3, 1920, Gen. Dawes executed an instrument guaranteeing the payment of principal and interest as the same matured, and in the succeeding months the whole issue was sold. The Eastern Brass & Ingot Corporation was credited on the books of the Central Trust Company with 90 per cent. of the par value of the bonds, together with accrued interest at the time of the sale, and made withdrawals against these credits. The first installment of interest, due November, 1921, was paid.

It therefore appears that the directors of the Eastern Brass & Ingot Corporation knew or had full means of knowing the conditions and terms of sale and the procedure adopted in disposing of the bonds. Though sold below par, and contrary to the exact language of the resolution adopted by the board of directors of that company, it seems that the course of the transaction was in accordance with the intention of the parties. Indeed, from the resolution as adopted, it appears that the Eastern Brass & Ingot Corporation was to receive but 90 per cent. of the proceeds, as the resolution authorized the directors to pay 10 per cent. for services in selling. It may well be said that the resolution was carried out to the full intent and understanding of the contracting parties. The only failure to follow the resolution literally was the failure to sell at par; but as the Eastern Brass & Ingot Corporation received all it expected to receive, and all that the resolution provided that it should receive after the expenses of selling were paid, the result is the same, and no damage whatever resulted to the Eastern Brass & Ingot Corporation. Such conclusion finds ample justification in the courts of last resort. In Union Pacific Railway Co. v. Chicago, etc., Ry. Co., 163 U. S. 564, 16 Sup. Ct. 1173, 41 L. Ed. 265, Chief Justice Fuller, on page 596 (16 Sup. Ct. 1185), said:

"Appellants contend that the action of the stockholders and the executive committee was ineffectual, because the board of directors was the only body that could authorize the president and secretary to make the contract. The contract appearing on its face to have been duly executed, and the parties having entered upon its execution, necessarily with full knowledge on the part of

the board of directors of the Pacific Company, the board would be presumed to have ratified it, although it in fact took no affirmative action in the matter. Pittsburgh, etc., Railway Co. v. Keokuk Bridge Co., 131 U. S. 371, 381."

In the Pittsburgh Railway Case therein cited, Mr. Justice Gray said on page 381 (9 Sup. Ct. 773):

"And when a contract is made by any agent of a corporation in its behalf, and for a purpose authorized by its charter, and the corporation receives the benefit of the contract, without objection, it may be presumed to have authorized or ratified the contract of its agent. Bank of Columbia v. Patterson, 7 Cranch. 299; Bank of United States v. Dandridge, 12 Wheat. 64; Zabriskie v. Cleveland, etc., Railroad, 23 How. 381; Gold Mining Co. v. National Bank, 96 U. S. 640; Pneumatic Gas Co. v. Barry, 113 U. S. 322, 327. This doctrine was clearly and strongly stated by Mr. Justice Story, delivering the judgment of this court, in each of the first two of the cases just cited."

In the case at bar the Central Trust Company was the agent for the Eastern Brass & Ingot Corporation for the sale of the bonds, and the latter corporation must be deemed to have ratified the sale as it was carried out. To hold otherwise would be to deprive the bondholders, who acted in good faith, of the security given. See, also, Tryon v. White & Corbin Co., 62 Conn. 161, 25 Atl. 712, 20 L. R. A. 291; Jourdan v. Long Island R. R. Co., 115 N. Y. 380, 22 N. E. 153; Sherman et al. v. Fitch, 98 Mass. 59; Mercer, Receiver, v. Steil et al., 97 Conn. 583, 117 Atl. 689.

[2] The receiver further contends that the principal of the bonds maturing prior to the institution of this suit were paid. It is very clear—in fact, it is conceded—that no payments were made by the Eastern Brass & Ingot Corporation subsequent to the payment of interest in November, 1920. The contention, however, is that Gen. Dawes, the guarantor, paid ensuing installments. Under the view I take, it is unnecessary to consider whether the defense of payment is available to the defendant because of his failure to plead it as a special defense under the Connecticut rule. From the evidence it appears that Gen. Dawes directed the Central Trust Company to purchase certain of the bonds (it does not appear just how many) and to charge them to his account with the trust company. This was done. The receiver contends that this was in fact payment to the bondholders, and that in consequence of that act there was no default sufficient to warrant foreclosure proceedings by the trustees. I cannot accede to this proposition. The position taken by the receiver is that, since Gen. Dawes must have known of the insolvent condition of the Eastern Brass & Ingot Corporation, of which he was a stockholder, it would be very improbable that he would purchase the bonds at par, and that therefore his direction to purchase must be taken as a direction to pay the holders of the bonds. This seems to be a non sequitur. The question of whether a transfer of money is payment is largely a question of the intention of the parties. Thus in 30 Cyc. p. 1180, regarding payment, we find that:

"As used in its strict legal sense, there must be a delivery by the debtor or his representative of money or something accepted by the creditor as the equivalent thereof, with the intention on the part of the debtor to pay the debt in whole or in part, and accepted as payment by the creditor."

And in Ketchum v. Duncan, 96 U. S. 659, 24 L. Ed. 868, Mr. Justice Strong said (page 662 [24 L. Ed. 868]):

"It is as difficult to see how there can be a payment and extinguishment thereby of a debt without any intention to pay it as it is to see how there can be a sale without an intention to sell."

Since payment of the principal and interest on the bonds were guaranteed, there seems to be nothing remarkable in a purchase at par. Presumably the individual bondholders felt contented in their security and were unwilling to sell for less. Under general principles of subrogation, a guarantor paying the debt of his principal is subrogated to the security which the creditor possesses. Hudson Trust Co. v. Cushman, 93 Conn. 119, 105 Atl. 344. It is therefore quite consistent with the situation of the parties that a purchase and not a payment was intended. The ultimate factor in determining whether Gen. Dawes intended a payment or a purchase seems to be the question of whether he would prefer to bring suit in his own name, being subrogated to the rights of the trustees, or to have the trustees sue for him as one of the bondholders. Considering all the circumstances of the case, it is more probable that his intention was the latter, and that there was a purchase of the bonds, and not a payment to the bondholders. The trustees are therefore the proper parties to bring the suit. This disposes of the principal defenses raised by the receiver.

There appears to be no real basis for the contention that no valid outstanding indebtedness has been shown. The evidence clearly shows that no payments were made subsequent to the payment of interest in November, 1920. The amended complaint alleges that the whole amount of the bonds has become due and is unpaid, and this is not denied, except as above noted.

[3] Nor was it necessary that the bonds be put in evidence at the trial. In Dickerman v. Northern Trust Co., 176 U. S. 161, 20 Sup. Ct. 311, 44 L. Ed. 423, Mr. Justice Brown said (page 194 [20 Sup. Ct. 316]):

"It was sufficient to prove that the bonds were valid and were outstanding obligations of the company, and it was not necessary to show in whose hands they were or to require their production. Indeed, an order to that effect could only result in delaying a decree indefinitely since in cases of corporate mortgages the bonds are often widely scattered, owned in foreign countries, or by persons totally ignorant that a suit for foreclosure is in progress. Months and even years might be required to produce them all. The practice has been to order a decree for foreclosure and sale without their production. Guarantee Trust Co. v. Green Cove Railroad, 139 U. S. 137, 150; Toler v. East Tenn. &c. Railway Co., 67 Fed. 168, 180."

See, also, Fletcher on Corporations, vol. 3, p. 2364.

For these reasons, therefore, I hold that the mortgage is valid with reference to which there has been a default in payment, and that on April 7, 1924, there was due the plaintiffs the sum of $124,177.90, for which amount, plus accumulations of interest from that date to the date of the decree, they are entitled to judgment, and the receiver is ordered to pay over to the trustees, for pro rata distribution among the bondholders, the sum of $52,500, the proceeds of the sale of the mortgaged property, upon surrender of uncanceled bonds and coupons.

If counsel agree upon the form of the decree and the details respecting it, the same may be mailed for the signature of the court; but, if counsel are unable to agree, settlement of the same will be made on June 30, 1924, at New Haven, at 10 o'clock in the forenoon, Eastern standard time.