PARROTT v. NOEL, Internal Revenue Collector.

(District Court, E. D. Virginia. June 16, 1925.)

1. Gifts ⊚⇒4—Unqualified expressed intent to make gift ordinarily conclusive of character of transaction.

Unqualified expressed intent to make a gift, followed by voluntary and absolute transfer, is ordinarily conclusive of character of transaction.

2. Evidence ⊚⇒53—Courts will not indulge presumption, when evidence of matter presumed is at hand.

Courts will not indulge presumption, when evidence of matter presumed is at hand.

3. Internal revenue ⊚⇒38—Evidence held to show that fund distributed to corporate officers and employees was gift, not taxable income.

Evidence held to show that fund distributed to officers and employees of corporation was intended as gift, and not taxable income, in consideration of future services and fidelity.

4. Gifts ⊚⇒4—Purpose to give and execution of purpose by delivery, actual or constructive, are essential to "gift."

Essentials of "gift" are intent to deliver gratuitously and without legal consideration, and a delivery, either actual or constructive; both purpose and execution of purpose being essential.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Gift.]

5. Internal revenue ⊚⇒7—That money distributed to corporate officers and employees was not valid as gift held not to render it taxable income in hands of recipients.

That gratuitous distribution of money to officers and employees of corporation might be invalid as gift for want of authority of directors to make appropriation for such purpose, or for want of ratification by stockholders, held not to make money so distributed and intended as a gift taxable income in hands of recipients.

6. Corporations ⊚⇒312(3)—Directors' appropriation of corporate funds as gift without stockholders' consent ordinarily misappropriation.

Directors of corporation are not stockholders' agents, for purpose of divesting corporation of any of its property, except in ordinary course of business, and appropriation of corporate funds as gift without consent of stockholders would ordinarily be a misappropriation.

7. Corporations ⊚⇒182—Rights of stockholders to dispose of assets, with or without consideration, stated.

Stockholders of private corporation by unanimous agreement, where rights of creditors are not involved, and where proposed act will not impair their obligations to state, may dispose of corporate assets without restriction, with or without consideration.

8. Corporations ⊚⇒426(1)—Unauthorized acts within corporate powers may be ratified as unauthorized acts of agent for natural person with exception stated.

Except that transaction conflicting with statutory obligations of corporation cannot be ratified, unauthorized acts within corporate powers are governed by same general principles that govern ratification of unauthorized acts by agent of natural person.

9. Corporations ⊚⇒426(1)—Stockholders may ratify unauthorized acts by acquiescence, recognition, or failure to act.

Stockholders may ratify unauthorized act by acquiescence or recognition, or by failure to act on acquiring full knowledge of facts.

At Law. Action by John H. Parrott against John C. Noel, Collector of Internal Revenue. Judgment for plaintiff.

P. J. McCumber, of Washington, D. C., for plaintiff.

Leroy L. Hight, Sp. Atty. Department of Justice, of Washington, D. C., for defendant.

GRONER, District Judge. This is an action brought by the plaintiff to recover from the defendant $22,915.25, with interest from October 28, 1924, being the sum assessed against plaintiff by the Commissioner of Internal Revenue as additional income taxes for the year 1920 and paid under duress. By appropriate proceedings the plaintiff appealed from the assessment so made to the Board of Tax Appeals, and, after hearing there, the assessment was sustained.

The board made the following findings of fact, which are admitted to be correct:

(1) On May 20, 1920, and for several years prior thereto, the taxpayer was the general superintendent and a member of the board of directors of the American Coal Company of Allegany County, N. J. For his services as general superintendent he received an annual salary of $7,000, to which was added a yearly bonus of $3,500, and he also received director's fees.

(2) The taxpayer was also employed as general manager of the Pawama Coal & Coke Company, another coal-mining company, from which he received a salary of $8,750 per annum. In both companies his

duties were those of general superintendence of coal-mining operations.

(3) The American Coal Company had no regular system for payment of pensions or retiring allowances to officers or employees and the taxpayer had no promise or agreement that he should receive any compensation for his regular services, other than the the salary, bonus, and fees mentioned.

(4) On July 14, 1919, when the corporation had a large accumulated surplus, the executive committee of the company adopted a resolution as follows:

"Resolved, that a gratuitous appropriation equal in amount to $3 per share on the outstanding stock of the company be set aside out of the assets for distribution to certain officers and employees of the company and that the executive committee be authorized to make such distribution as they deem wise and proper."

At the same meeting the following resolution was adopted:

"The officers of the company are directed to endeavor to secure a bid for the company's physical properties or for the shares of stock, and are hereby authorized to sell the directors' shares at $57 per share at any time subsequent to the distribution of $25 per share."

These resolutions were immediately approved by the board of directors, and the executive committee thereupon proceeded to adopt a resolution providing:

"In conformity with the authority vested in the committee by the board of directors, and after much discussion and consideration, it was resolved that the appropriation for officers and employees be distributed as follows:

Mr. W. De L. Walbridge, president....$45,947
Mr. George M. Bowlby, treasurer and auditor. ........................ 45,947
Mr. J. H. Parrott, general superintendent ........................... 35,000
Mr. W. F. Woods, secretary.......... 7,500
Mr. H. W. Holly, assistant treasurer.. 5,000
Mr. M. Ambrose, clerk............... 2,400
Mr. W. Geffken, clerk. .............. 2,000
Mr. J. Tucker, clerk. ................ 2,000"

(5) On April 24, 1920, a contract was made between William C. Atwater & Co., Inc., and certain stockholders of the American Coal Company. By the contract those stockholders agreed to sell their stock and to procure the sale to the Atwater Company of altogether at least 25,000 of the 48,598 outstanding shares of the American Coal Company at $75 per share, and the Atwater Company agreed to buy the entire outstanding stock at the same price if stockholders

8 F.(2d)—24

should deposit it with a trustee by a stated time. The contract provided that the agreed price of $75 per share might be reduced by $10 per share if a dividend to that amount were paid before a stated time, and continued:

" * * * It being understood and agreed that the said coal company may, in addition to the dividend hereinabove provided for, distribute a further sum in amount equal to $3 per share on the 48,598 shares of the outstanding stock, in such manner and for such purposes as the directors may by resolution decide in addition to the current expenses of the company."

On April 26, 1920, a letter was sent by the president of the American Coal Company to its stockholders, telling of the contract and and the opportunity to sell the stock at $75 per share, and concluding:

"If the purchase is completed, the present officers and directors will resign and be replaced by men selected by the purchasers, and, in that event, the retiring officers and employees will participate in an appropriation equal to $3 per share, unanimously voted to them by the directors, the same with the approval of the purchasers, to be paid from the assets of the company, and will not affect the purchase price of $75 offered for the stock."

(6) Practically all of the stockholders turned in their stock and accepted the price offered by the purchaser. On May 20, 1920, the officers of the company distributed the fund appropriated by the executive committee's resolution of July 14, 1919, in the amounts provided by the resolution adopted at their second meeting on that date. By such distribution the taxpayer received $35,000.

(7) Thereafter, still on May 20, 1920, the taxpayer and all the other officers and directors of the American Coal Company resigned and the purchaser of the stock took over its management.

(8) The American Coal Company, in its income tax return for the year 1920, treated and claimed the sum so distributed to the taxpayer, and similar sums distributed to others, as a salary deduction from its gross income.

(9) The taxpayer, in his income tax return for 1920, excluded from gross income this item of $35,000. On audit the Commissioner of Internal Revenue determined that the item of $35,000 should have been included in gross income, and on July 16, 1924, he notified the taxpayer by registered mail of his determination and of a deficiency in tax,

resulting from this determination and other adjustments, of $101,238.62. On July 31, 1924, the taxpayer initiated this appeal by filing a petition with the board.

The question for decision is whether the item of $35,000 received by the plaintiff, under the circumstances shown in the findings of fact, is a "gift," within the meaning of the Income Tax Law (Revenue Act of 1918 [Comp. St. Ann. Supp. 1919, § 6336⅛a et seq.]), or whether it was compensation for his services to the American Coal Company in his official capacity as its general superintendent, or was "gains or profits and income derived from any source whatever." Admittedly, if the item in question was a gift, the assessment of the tax upon the same was invalid, and admittedly, also, if it was not a gift, but was "compensation" or "gains or profits," the assessment should be sustained. The tax board was of opinion that, since there was nothing in the record to show that at the time the directors approved the resolution of the executive committee for the distribution of the appropriation the corporation would not continue its corporate existence under the same management, the appropriation was not contingent upon the sale of the property, and might as well have been designated a bonus or adjusted compensation for faithful services in past and to encourage fidelity and zeal in the future. It therefore held that the use of the word "gratuitous," in the resolution making the appropriation, did not necessarily indicate an intent to make a gift, and that, the taxpayer having thus failed to establish the appropriation as a gift, there was a failure to establish a right to relief.

There was a lapse of a little more than 10 months between the adoption of the resolution and the distribution of the fund, and coincidently with the latter event all of the officers and directors, including plaintiff, resigned, and the purchaser of the stock of the American Coal Company took over its management. It does not clearly appear from the agreed statement of facts why the distribution of the fund set aside for the designated officers and employees on July 14, 1919, was not immediately made; but it is a fair inference, from the fact that at the same meeting another resolution authorized a sale of the company's property, that the "gratuitous appropriation" to the officers in question was adopted in contemplation of that event.

[1] The suggestion of the board, therefore, that the payment might have been intended to encourage the officers and employees in question to fidelity and zeal in the future, finds less justification in fact than its other statement that it might have been intended for the purpose of rewarding them for faithful services in the past. Indeed, it is just as likely, for aught that appears, that it was a generosity growing out of the contemplated severance of a mutually profitable official relationship; but, whatever may have been the motive, it is clear that the board of the American Coal Company, in the adoption of the resolution in question, regarded the sum appropriated, and to be distributed among its officers and employees in the discretion of its executive committee, as a gift, for this is clearly indicated by the language used. They termed it "a gratuitous appropriation," and there is no evidence anywhere that they ever regarded it otherwise; and ordinarily an intention thus expressed, and not elsewhere qualified, followed by a voluntary and absolute transfer of the thing or property, is conclusive of the character of the transfer. To hold otherwise would be to substitute a presumption in the place and stead of a contemporaneous written declaration of a fact.

[2, 3] As a general rule, courts will not indulge a presumption when evidence of the matter presumed is at hand. Here the evidence clearly shows, I think, an expressed intention on the part of the directors of a corporation, in contemplation of a sale of the interests therein of those who then owned the corporation, to make a transfer of money to several of its officers and employees, to take effect upon the happening of that event, which event should also mark the severance of relations on the part of the officers and employees thus benefited with the company. That action thus impelled might have been in recognition of faithful services in the past would not, it seems to me, change the character of the transfer, since it was a matter of generosity and condescension, rather than a matter of right or obligation, for admittedly there was then no promise or agreement binding on the corporation. Its every obligation had been fully discharged.

[4] The essential elements of a gift are an intention to deliver, gratuitously and without legal consideration, and a delivery, either actual or constructive, of the thing given. There must be both the purpose and the execution of the purpose. The expression of the purpose may be either oral or in writing, and it must be carried into effect by

delivery of the thing itself and by acceptance of it by the donee. When those essentials obtain the gift is completed.

[5] It is, however, insisted on behalf of the defendant that, without regard to the intention of the directors of the company in voting for the adoption of the resolution making the appropriation of money and providing for its division and distribution among certain of the officers and employees, the thing itself, although so called, was not in fact a gift within the purview of the tax laws, because the term "gift," as used in the act, means a valid gift, and not an invalid, unauthorized, and illegal payment, and that, since the directors of a corporation as trustees of its property have no right to give away any of its property, except in the advancement of the interests of the corporation itself, their action was ultra vires and void, except upon the theory of compensation for services rendered or to be rendered.

[6] Undoubtedly, the fund from which the money received by the plaintiff came belonged to the stockholders of the corporation, and undoubtedly, also, the directors of the corporation are not the agents of the stockholders for the purpose of divesting the corporation of any of its property, except in the ordinary course of the business of the corporation, and therefore an appropriation of the funds of the company as a gift, by act of the directors without the consent of the stockholders, would ordinarily be a misappropriation—certainly an act beyond the corporate powers of the directors, and for which in most cases they would be personally liable at the suit of the corporation or a stockholder of the corporation.

[7] On the other hand, it is undoubtedly true that the stockholders of a private corporation may, by unanimous agreement, where the rights of creditors are not involved, and where the proposed act will not impair their obligations to the state of their creation, dispose of the corporate assets without restriction, and an appropriation by them, with or without consideration, would neither be outside the powers of the corporation itself nor forbidden by positive law or public policy. As is shown in the agreed facts, the notice to the then stockholders of the American Coal Company of the proposed sale of the shares of stock of the company, and the consequent transfer of the properties of the company to new owners, advised the stockholders that when the purchase should be completed the present officers and directors would resign, to be replaced by persons selected by the purchasers, and in that event the retiring officers and employees "will participate in an appropriation equal to $3 per share, unanimously voted to them by the directors, the same with the approval of the purchasers, to be paid from the assets of the company, and will not affect the purchase price of $75 offered for the stock."

On behalf of the plaintiff it is insisted that this was notice to the stockholders of the terms of the resolution under which the so-called gift was made, and that in the sale of the shares of stock to the new purchasers the old stockholders thereby ratified and confirmed the resolution previously adopted by the directors, and that as to the new stockholders, their purchase being based and conditioned upon the carrying out of this resolution, they too, in effect, ratified and confirmed what had been done.

[8, 9] Ordinarily, a transaction which conflicts with the statutory obligations of a corporation may not be ratified; but as a general rule it has been held that as to acts within its corporate powers it is governed by the same general principles that govern the ratification of unauthorized acts of an agent for a natural person. So the stockholders of a private corporation may ratify any act or contract which they might have authorized in the first instance. In the regular course of events, ratification should be had at a meeting duly called and held for that purpose; but this is not absolute, and it may as well be by other means, as, for instance, by acquiescence or recognition on the part of the stockholders, or by their failure to act with full knowledge of the facts. Under these circumstances, ordinarily, ratification will be implied. See Railway Companies v. Keokuk, etc., Bridge Co., 131 U. S. 371, 9 S. Ct. 770, 33 L. Ed. 157; Union Pacific Ry. v. Chicago, 163 U. S. 564–596, 16 S. Ct. 1173, 41 L. Ed. 265; Coney Island Co. v. McIntyre, 200 F. 901, 119 C. C. A. 197; Central Trust Co. v. Cassidy (D. C.) 300 F. 386.

It cannot be doubted, from the agreed facts in this case, that at least the great majority of the stockholders of this corporation were fully apprised of the character of the resolution and its purpose, and sold their stock and thus severed their relationship with the corporation and its assets without objection thereto; and more than five years have now elapsed since the consummation of this transaction. It is, therefore, at least doubtful whether they, or any of them, would now be heard to complain; but, conceding

that a majority may not give away the rights of a minority without consideration, and also conceding that therefore there was not a valid ratification of the contract, it is difficult to understand how this fact would so change the character of the delivery of the money as would bring it within the term "income," as defined by the tax statute. The corporation having previously discharged its full obligation to plaintiff for anything due him for services rendered, or otherwise, the abortive effort, even if it may be thus characterized, of its board of directors to make the payment a gratuity, would not make it a payment for services, nor convert it into "gains or profits" in his hands, to which he is entitled, and therefore upon which a tax was due. Quoad the sum so received by him, under the circumstances presumed, he would be, at most, a trustee or bailee, for the stockholders, of a sum of money impressed with a trust, and for which he must account when called upon, and that this question may not be raised by a stranger to the corporation, or the transaction questioned, except by the corporation, its stockholders or creditors, does not change the rule. It is either his as a gift or not his at all, and in either event immune from the tax sought to be imposed.

Ten days will be allowed for the submission of motions, after which judgment will be entered up for the plaintiff for the amount sued for, with interest.